THE STATE OF OHIO, APPELLANT, *v.* RHODES, APPELLEE.

[Cite as *State v. Rhodes* (1992), 63 Ohio St.3d 613.]

614

(No. 91–142—Submitted January 14, 1992—Decided May 13, 1992.)

616

S. Michael Miller, Prosecuting Attorney, and *Alan C. Travis*, for appellant.

*Vivyan, Graeff, Rigg & Schneider* and *David J. Graeff*, for appellee.

*Randall M. Dana*, Ohio Public Defender, *Gregory L. Ayers* and *Shelly R. Smith*, urging affirmance for *amicus curiae*, Ohio Public Defender Commission.

WRIGHT, J. This case requires us to decide whether a defendant on trial for murder bears the burden of establishing by a preponderance of the evidence that he was "under the influence of sudden passion or in a sudden fit of rage,

either of which was brought on by serious provocation occasioned by the victim that * * * [was] reasonably sufficient to incite the * * * [defendant] into using deadly force * * * "—the mitigating circumstances of R.C. 2903.-03(A)—, in order for a jury to find the defendant guilty of voluntary manslaughter rather than murder. In order to understand the import of the issue before us, a review of the law of voluntary manslaughter is necessary. The text of the relevant portion of the voluntary manslaughter statute, R.C. 2903.03(A), reads as follows:

"No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another."

R.C. 2903.03 defines voluntary manslaughter as a single offense that, under certain circumstances, permits a defendant to mitigate a charge of murder to manslaughter. The crime comprises elements that must be proven by the prosecution and mitigating circumstances that must be established by the defendant.[2] Under the statute, the jury must find a defendant guilty of voluntary manslaughter rather than murder if the prosecution has proven, beyond a reasonable doubt, that the defendant knowingly caused the victim's death, and if the defendant has established by a preponderance of the evidence the existence of one or both of the mitigating circumstances.

Voluntary manslaughter is, by our prior definition, an inferior degree of murder. *State v. Tyler* (1990), 50 Ohio St.3d 24, 36, 553 N.E.2d 576, 592. Accord *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph two of the syllabus. Thus, if a defendant on trial for murder or aggravated murder (or the prosecution in such trial) produces evidence of one or both of the mitigating circumstances set forth in R.C. 2903.03, that evidence will be sufficient to entitle a defendant to an instruction on voluntary manslaughter as an inferior degree of murder if under any reasonable view of the evidence, and when all of the evidence is construed in a light most favorable to the defendant, a reasonable jury could find that the defendant had established by a preponderance of the evidence the existence of one or both of the mitigating

---

2. The mitigating circumstances are (1) sudden passion in response to serious provocation by the victim sufficient to incite the defendant to use deadly force, and (2) a sudden fit of rage in response to serious provocation by the victim sufficient to incite the defendant to use deadly force. In *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, we designated these circumstances as "mitigating elements." Henceforth, to avoid confusion as to what constitutes the elements of the offenses of voluntary manslaughter and aggravated assault, we will use the term "mitigating circumstances" to refer to those factors that a defendant bears the burden of proving by a preponderance of the evidence in order to mitigate his or her culpability from an indicted greater offense to an offense of an inferior degree.

circumstances. *State v. Wilkins* (1980), 64 Ohio St.2d 382, 388, 18 O.O.3d 528, 532, 415 N.E.2d 303, 308.

If a defendant is not charged with murder or aggravated murder, but rather is on trial for voluntary manslaughter, neither party is required to establish either of the mitigating circumstances. Rather, the court presumes (to the benefit of the defendant) the existence of one or both of the mitigating circumstances as a result of the prosecutor's decision to try the defendant on the charge of voluntary manslaughter rather than murder. In that situation, the prosecution needs to prove, beyond a reasonable doubt, only that the defendant knowingly caused the death of another, and it is not a defense to voluntary manslaughter that neither party is able to demonstrate the existence of a mitigating circumstance. *State v. Calhoun* (1983), 10 Ohio App.3d 23, 10 OBR 30, 460 N.E.2d 294, motion for leave to appeal overruled (1983).

We now turn our attention to the central issue in this matter: whether the trial court's instruction to the jury on the burden of establishing either of the mitigating circumstances of R.C. 2903.03 was proper. Because the instruction at issue was not objected to at trial, and because the record does not reflect that the court rejected a defense-proposed alternative to the instruction given, we review the instruction for plain error. *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332.

In its instructions to the jury, the court placed upon the defendant the burden of establishing by a preponderance of the evidence either of the mitigating circumstances of R.C. 2903.03(A). In *State v. Muscatello* (1978), 55 Ohio St.2d 201, 9 O.O.3d 148, 378 N.E.2d 738, we analyzed the predecessor manslaughter statute and determined that the "mitigating circumstance" of "extreme emotional stress" was not an element of the crime of voluntary manslaughter. *Id.* at paragraph one of the syllabus. We also determined that the defendant was not required to establish the mitigating circumstance of extreme emotional stress by either a preponderance of the evidence or beyond a reasonable doubt "in order for the jury to consider the * * * [inferior degree] offense of voluntary manslaughter." *Id.* at paragraph three of the syllabus. At the time the defendant in *Muscatello* originally went to trial, former R.C. 2901.05(A) placed only the burden of production, and not the burden of persuasion, upon the defendant asserting an affirmative defense. *State v. Robinson* (1976), 47 Ohio St.2d 103, 1 O.O.3d 61, 351 N.E.2d 88; former R.C. 2901.05(A) (134 Ohio Laws, Part II, 1866, 1893).

*Muscatello* is as instructive for what it does not say as it is for what it does. Although some would suggest that *Muscatello* stands for the proposition that the mitigating circumstance "extreme emotional stress" is not an element of an affirmative defense, and thus its equivalent under the current statute,

"sudden passion or sudden fit of rage," also does not need to be proven as an element of an affirmative defense, we find no such language in the court's opinion. Indeed, an examination of the court of appeals' decision affirmed in *Muscatello* substantially contradicts that suggestion: "Emotional stress as a mitigating circumstance is similar to an affirmative defense since it operates as a defense to the higher offenses of aggravated murder and murder. As such, the law in Ohio applicable to affirmative defenses is also clearly applicable to the mitigating factor of emotional stress." *State v. Muscatello* (1977), 57 Ohio App.2d 231, 248, 11 O.O.3d 320, 330, 387 N.E.2d 627, 640. Clearly, the court of appeals directly, and this court by implication, in the respective *Muscatello* opinions, viewed the law relating to affirmative defenses as applicable to the mitigation of a charge of murder to voluntary manslaughter, and, for that reason, both courts chose not to place the burden of persuasion upon the defendant who sets forth a mitigating circumstance.[3]

In 1978, the General Assembly amended former R.C. 2901.05(A) and changed the burden imposed upon a defendant asserting an affirmative defense (137 Ohio Laws, Part II, 3895, 3896). Currently, a defendant bears the burden of production, as before, as well as the burden by a preponderance of the evidence to prove an affirmative defense. R.C. 2901.05(A). In view of that statutory change, our decision now whether the implicit rationale underlying *Muscatello* should stand will determine whether a court may require a defendant to prove either of the mitigating circumstances by a preponderance of the evidence.

We see no reason to alter the course set forth in *Muscatello*, and we thus continue to view the law regarding affirmative defenses to be applicable to the proof of mitigation to reduce a charge of murder to manslaughter. As before, the defendant bears the burden of producing evidence of a mitigating circumstance "in order for a jury to consider * * * [as an inferior degree of murder,] voluntary manslaughter." *Muscatello*, 55 Ohio St.2d at 203, 9 O.O.3d at 150, 378 N.E.2d at 740.[4] The jury now, however, must weigh the evidence in mitigation in light of defendant's burden to establish the existence of either of the mitigating circumstances by a preponderance of the evidence.

---

3. Additionally, a careful reading of *Muscatello* reveals that the court was not concerned as much with how the jury should weigh the evidence of the mitigating circumstance of extreme emotional stress as it was with the quantum of evidence of the mitigating circumstance necessary for the defendant to be entitled to have the jury consider the offense of voluntary manslaughter as an inferior degree of murder. See *Muscatello, supra,* at paragraph three of the syllabus.

4. This is not to say that the defendant cannot rely upon evidence adduced by the prosecution to discharge his burden.

To that extent, we apply the current statute concerning affirmative defenses to our prior decision in *Muscatello* and modify it accordingly.

The result here is consistent with the practice approved by the United States Supreme Court in *Patterson v. New York* (1977), 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281. In *Patterson*, the court upheld a New York law that placed the burden of persuasion upon the defendant to prove by a preponderance of the evidence that he acted under the influence of extreme emotional stress to reduce the crime of second-degree murder to manslaughter. Because placing the burden to prove mitigation upon the defendant does not require him to disprove an element of the offense of murder, we similarly find the practice to be acceptable under both the Ohio and United States Constitutions.

Thus, we hold that a defendant on trial for murder or aggravated murder bears the burden of persuading the fact finder, by a preponderance of the evidence, that he or she acted under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force, R.C. 2903.03(A), in order for the defendant to be convicted of voluntary manslaughter rather than murder or aggravated murder. The court shall instruct the jury on the offense of voluntary manslaughter if the defendant meets his burden of production with respect to evidence of one or both of the mitigating circumstances of R.C. 2903.03(A).[5]

In this case, the trial court properly placed the burden of proof upon the defendant to prove the mitigating circumstances of R.C. 2903.03(A) by a preponderance of the evidence. The judgment of the court of appeals is reversed.

*Judgment reversed.*

SWEENEY and HOLMES, JJ., concur.

RESNICK, J., concurs in the syllabus and judgment.

MOYER, C.J., DOUGLAS and H. BROWN, JJ., dissent.

ALICE ROBIE RESNICK, J., concurring. I concur in the syllabus and judgment of the majority opinion. The syllabus appropriately allocates the burden of proof to the accused when a defendant on trial for murder or aggravated murder attempts to show the presence of one or both of the mitigating circumstances set forth in the voluntary manslaughter statute, R.C. 2903.03.

---

5. We do not address herein the issue of what quantity and quality of evidence must be produced in order for a murder defendant to obtain an instruction on voluntary manslaughter.

The majority opinion correctly points out that the court of appeals, in its decision in *State v. Muscatello* (1977), 57 Ohio App.2d 231, 248, 11 O.O.3d 320, 330, 387 N.E.2d 627, 640, stated that " * * * the law in Ohio applicable to affirmative defenses is also clearly applicable to the mitigating factor of emotional stress." In addition, the court of appeals held, in the first syllabus paragraph of its decision in *Muscatello:* "Emotional stress is not an element of the offense of voluntary manslaughter, R.C. 2903.03, which the state must prove beyond a reasonable doubt. Emotional stress is a mitigating circumstance for which the defendant in a criminal prosecution bears the burden of producing some evidence and does not have the burden of establishing such mitigating circumstance by a preponderance of the evidence or beyond a reasonable doubt."

At the time that the Supreme Court of Ohio affirmed the decision in *Muscatello,* 55 Ohio St.2d 201, 9 O.O.3d 148, 378 N.E.2d 738, former R.C. 2901.05(A) placed no burden of proof upon a defendant seeking to show the existence of an affirmative defense. That statute was soon after amended to place the burden of proof, by a preponderance of the evidence, upon a defendant seeking to establish an affirmative defense. In affirming the decision of the court of appeals in *Muscatello,* the Supreme Court did not refute the statement made by the court of appeals that the law relating to affirmative defenses applies to the mitigating circumstance of emotional stress. This indeed was a correct statement of longstanding Ohio law. See *State v. Vargo* (1927), 116 Ohio St. 495, 507, 156 N.E. 600, 604 (stating that a defense, even if it functions as an attempt to reduce the degree of the crime, rather than as a complete defense, can still be termed an affirmative defense).[6]

As the majority notes, the United States Supreme Court, in *Patterson v. New York* (1977), 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281, upheld the constitutionality of New York's practice of placing the burden of proof, by a preponderance of the evidence, upon a defendant claiming to have acted under the influence of extreme emotional disturbance. The New York manslaughter statute at issue defined extreme emotional disturbance as a "mitigating circumstance," and New York law treated that mitigating circumstance squarely as an affirmative defense. It is clear that when the Ohio General Assembly amended R.C. 2901.05(A) to place the burden of proof of an

---

6. " * * * [A]t common law the burden of proving [heat of passion or sudden provocation], as well as other affirmative defenses—indeed, 'all * * * circumstances of justification, excuse or alleviation'—rested on the defendant." *Patterson v. New York* (1977), 432 U.S. 197, 202, 97 S.Ct. 2319, 2323, 53 L.Ed.2d 281, 287, quoting from 4 Blackstone, Commentaries on the Laws of England (1769) 201. See, also, *Commonwealth v. York* (1845), 50 Mass. 93.

affirmative defense by a preponderance of the evidence upon a defendant, the revision realistically should have also placed the burden of proof of the mitigating circumstances of sudden passion or a sudden fit of rage on a defendant seeking to establish them. The Supreme Court decision in *Muscatello* does not mandate otherwise.

Why then has so much confusion been engendered on this issue? It appears that the Supreme Court decision in *Muscatello*, by holding in paragraph two of the syllabus that "[e]xtreme emotional stress, as described in R.C. 2903.03, is a circumstance, the establishment of which mitigates a defendant's criminal culpability," is responsible for much of the confusion. Some courts seem to reason that if sudden passion or a sudden fit of rage (the mitigating circumstances contained in the present R.C. 2903.03) are *circumstances*, they must necessarily be something totally separate from affirmative defenses. However, neither the Supreme Court decision in *Muscatello*, nor R.C. 2901.05(C), requires that conclusion.

Rather, R.C. 2901.05(C) provides that an "affirmative defense" is either: "(1) A defense expressly designated as affirmative"; or "(2) A defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence." An accused who attempts to mitigate murder to voluntary manslaughter must necessarily show that he or she acted under the influence of sudden passion or a sudden fit of rage. Therefore, the accused is raising a defense particularly within his or her own knowledge. Even if a majority of this court is unwilling to define sudden passion or a sudden fit of rage squarely as affirmative defenses, it must be acknowledged that those mitigating circumstances are very much *like* affirmative defenses. As such, and because a defendant can be "fairly required to adduce supporting evidence" of the mitigating circumstances of voluntary manslaughter, there is nothing prejudicial in placing the burden of proof upon the defendant, by a preponderance of the evidence, to show the existence of the mitigating circumstance(s).

The *Patterson* court, quoting with approval from a concurring opinion filed in the decision below (which was being appealed to the United States Supreme Court), succinctly pointed out: " 'The placing of the burden of proof on the defense, with a lower threshold, however, is fair because of defendant's knowledge or access to the evidence * * *. To require the prosecution to negative the "element" of mitigating circumstances is generally unfair, especially since the conclusion that the negative of the circumstances is necessarily a product of definitional and therefore circular reasoning * * *.' " *Patterson, supra*, 432 U.S. at 211, 97 S.Ct. at 2327, 53 L.Ed.2d at 293, fn. 13, quoting

from *People v. Patterson* (1976), 39 N.Y.2d 288, 305–306, 383 N.Y.S.2d 573, 584, 347 N.E.2d 898, 909 (Breitel, J., concurring).

Indeed, here the evidence surrounding proof of the mitigating circumstances is singularly within the knowledge of the accused. These mitigating circumstances fall squarely within the definition of an "affirmative defense" contained in R.C. 2901.05(C): " * * * an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence."

Additionally the *Patterson* court stated: "It is plain enough that if the intentional killing is shown, the State intends to deal with the defendant as a murderer unless he demonstrates the mitigating circumstances." 432 U.S. at 206, 97 S.Ct. at 2325, 53 L.Ed.2d at 289. From this it can be seen that the prosecution is still required to prove each and every element of the crime, but that a mitigating circumstance, according to *Patterson*, conceptually " * * * constitutes a separate issue on which the defendant is [permissibly] required to carry the burden of persuasion * * *." 432 U.S. at 207, 97 S.Ct. at 2325, 53 L.Ed.2d at 290. It becomes readily apparent that a defendant's due process rights are not violated when the burden of proof is placed upon him or her not only as to an affirmative defense but also as to a mitigating circumstance. The state is required to establish the guilt of the defendant beyond a reasonable doubt. However, if the accused wishes to justify or mitigate his or her culpability, then the burden is properly placed upon the accused to prove such facts of "excuse or justification peculiarly within the knowledge of the accused" by a preponderance of the evidence.

It becomes readily apparent that we are dealing with semantics. This court, and properly so, does not wish to designate "sudden passion or a sudden fit of rage" as affirmative defenses. Rather, it would appear that we desire to continue to label them "mitigating circumstances." But whatever they are termed, they still excuse or justify the conduct of the accused; and pursuant to R.C. 2901.05(C), the accused should bear the burden of proof by a preponderance of the evidence. The General Assembly, if it sees fit, has the opportunity to expressly designate these mitigating circumstances as affirmative defenses, codifying the practice approved in *Patterson*.

HERBERT R. BROWN, J., dissenting. The majority holds that a defendant charged with murder or aggravated murder bears the burden of proving by a preponderance of the evidence that he acted under the influence of "sudden passion or in a sudden fit of rage" in order to reduce his culpability from murder to the lesser offense of voluntary manslaughter. To reach this result, the majority must find that (1) acting in "sudden passion or in a sudden fit of rage" is an affirmative defense and (2) shifting the burden to the defendant to

prove the affirmative defense does not require him to disprove an essential element of the crime with which he is charged. The majority opinion fails to meet either requirement. Because I believe that the majority perpetuates the confused state of the law and reaches the wrong result, I dissent.

I

The majority stops short of stating that voluntary manslaughter, R.C. 2903.03, is an affirmative defense to murder. However, by requiring the defendant to prove, by a preponderance of the evidence, that he acted under the influence of "sudden passion or in a sudden fit of rage" (the mitigating circumstances contained in the voluntary manslaughter statute), the majority in effect holds just that.

R.C. 2901.05(A) sets forth the burdens of proof for a criminal trial and provides the authority to shift the burden to the defendant as follows:

"Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. The burden of going forward with the evidence of an affirmative defense, and *the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused.*" (Emphasis added.)

Pursuant to R.C. 2901.05(A), therefore, the state may shift the burden to the defendant to prove an affirmative defense. Affirmative defense is defined by R.C. 2901.05(C), which provides:

" * * * [A]n 'affirmative defense' is either of the following:

"(1) A defense expressly designated as affirmative;

"(2) A defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence."

The majority ignores the statutory definition of an affirmative defense, and thus avoids the necessary step of analyzing how acting under the influence of "sudden passion or in a sudden fit of rage" fits within the statutory definition. Since it is not a "defense expressly designated as affirmative," see R.C. 2903.03, acting in "sudden passion or in a sudden fit of rage" can be an affirmative defense only if it falls under R.C. 2901.05(C)(2) as "involving an excuse or justification." It does not.

The leading case is *State v. Poole* (1973), 33 Ohio St.2d 18, 19, 62 O.O.2d 340, 294 N.E.2d 888, 889, in which we stated:

"This court has consistently recognized that there are certain 'justification[s] for admitted conduct' allowed to a defendant in a criminal case, provable for the most part under the plea of not guilty, which are referred to as 'affirmative defenses.' As characterized by one authority, they represent not a mere denial or contradiction of evidence which the prosecution has offered as proof of an essential element of the crime charged, but, rather, they represent a substantive or independent matter 'which the defendant claims exempts him from liability *even if it is conceded that the facts claimed by the prosecution are true.*' * * * " (Emphasis added and footnotes deleted.)

This court has consistently followed *Poole*, determining that an affirmative defense is in the nature of a "confession and avoidance," in which the defendant admits the elements of the crime, but seeks to prove some additional fact that absolves the defendant of guilt. See *Walden v. State* (1989), 47 Ohio St.3d 47, 50, 547 N.E.2d 962, 965; *State v. Curry* (1989), 45 Ohio St.3d 109, 111–112, 543 N.E.2d 1228, 1230; *State v. Martin* (1986), 21 Ohio St.3d 91, 94, 21 OBR 386, 388, 488 N.E.2d 166, 168; *State v. Doran* (1983), 5 Ohio St.3d 187, 193, 5 OBR 404, 409, 449 N.E.2d 1295, 1300. Affirmative defenses that fit the confession-and-avoidance definition include self-defense, insanity, intoxication, duress, and entrapment. *Poole, supra; Doran, supra.*

The mitigating circumstances in the voluntary manslaughter statute are not an affirmative defense. When a defendant claims that he acted under the influence of "sudden passion or in a sudden fit of rage," he does not admit the elements of murder. Specifically, he does not admit that he *purposely* caused the death of another. Further, the mitigating factors are not an independent matter that *excuse* or *justify* the defendant's conduct in taking the life of another. Instead, these factors *mitigate* the defendant's culpability. His emotional state does *not* absolve him from criminal liability.

The majority ignores the well-established precedent which defines an affirmative defense, and instead relies on *State v. Muscatello* (1978), 55 Ohio St.2d 201, 9 O.O.3d 148, 378 N.E.2d 738, to shift the burden to the defendant to prove the mitigating circumstances. Reliance on *Muscatello*, however, is tenuous. *Muscatello* begs the very question the majority seeks to answer.

*Muscatello* is not a case about affirmative defenses. In *Muscatello, supra,* this court analyzed the former voluntary manslaughter statute and determined that "extreme emotional stress" (the predecessor to acting in "sudden passion or in a sudden fit of rage") was a mitigating circumstance for which the defendant did not bear the burden of proof. *Muscatello* did not hold that "extreme emotional stress" was an affirmative defense, or even compare the mitigating circumstances to an affirmative defense. In fact, the opinion in

*Muscatello* does not discuss affirmative defenses or the defendant's burden of proof for an affirmative defense.[7] While the court of appeals' decision in *Muscatello* stated that "extreme emotional stress" was similar to an affirmative defense, *State v. Muscatello* (1977), 57 Ohio App.2d 231, 248, 11 O.O.3d 320, 330, 387 N.E.2d 627, 640, we did *not* adopt the court of appeals' reasoning on this issue. The majority's assertion that we implicitly did so is improper.

Ironically, our decision in *Muscatello* supports the view that extreme emotional stress is *not* an affirmative defense. Although the majority states that it can find no language in support of this view, the majority need look no further than paragraphs two and three of the syllabus, in which we held that "[e]xtreme emotional stress [now 'sudden passion' or 'sudden fit of rage'] * * * is a circumstance, the establishment of which *mitigates* a defendant's criminal culpability," *and for which the defendant does not bear the burden of proof.* (Emphasis added.)

The majority's reliance on *Muscatello* is a clumsy attempt to bypass the statutory definition of affirmative defense and our well-established precedent.

## II

Even assuming the majority could show that the mitigating circumstances of voluntary manslaughter fit the statutory definition of affirmative defense, shifting the burden to the defendant to prove that he acted under the influence of "sudden passion or in a sudden fit of rage" is a serious violation of the defendant's due process rights under the United States and the Ohio Constitutions.

Due process requires the prosecution to prove, beyond a reasonable doubt, every element necessary to constitute the crime with which the defendant is charged. *In re Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. Similarly, due process prohibits the state from requiring an accused to disprove an element of the crime charged. *Mullaney v. Wilbur* (1975), 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508.

In *Patterson v. New York* (1977), 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281, the United States Supreme Court upheld a New York statute which required a defendant charged with second-degree murder to prove the affirmative defense of extreme emotional disturbance by a preponderance of the evidence to reduce the murder charge to manslaughter. *Id.* at 205, 97 S.Ct. at

---

7. As the majority correctly states, *Muscatello* was decided while former R.C. 2901.05(A) was in effect, which placed only the burden of production, not the burden of persuasion, on a defendant asserting an affirmative defense. This fact alone, however, does not change our holding in *Muscatello* into what the majority would like.

2324, 53 L.Ed.2d at 289. The majority cites *Patterson* for the proposition that placing the burden of proof on the defendant to prove mitigation is constitutional because the defendant is not required to disprove an element of the offense of murder. Once again the majority leaps to a conclusion without analysis of the case it relies upon.

In *Patterson,* the United States Supreme Court analyzed the New York statute by (1) determining the essential elements of the crime with which the defendant was charged and (2) determining whether the affirmative defense, which the defendant was required to prove, negated any essential element of the crime. *Id.* at 205–207, 97 S.Ct. at 2324–2325, 53 L.Ed.2d at 289–290. See, also, *White v. Arn* (C.A.6, 1986), 788 F.2d 338, 343.

The Supreme Court found that the essential elements of the New York murder statute were "(1) 'Intent to cause the death of another person'; and (2) 'caus[ing] the death of such person or of a third person.'"[8] *Patterson, supra,* 432 U.S. at 198, 97 S.Ct. at 2321, 53 L.Ed.2d at 285. The court then considered whether the affirmative defense—acting under the influence of extreme emotional disturbance for which there was a reasonable explanation—negated any of the elements of murder. The court determined that the affirmative defense did not negate the essential elements of murder, but was instead a separate issue bearing no direct relationship to the elements of murder. *Id.* at 206–207, 97 S.Ct. at 2325, 53 L.Ed.2d at 289–290. Therefore, the court concluded that shifting the burden of proof to the defendant did not violate the Due Process Clause. *Id.*

A comparison of the New York murder statute in *Patterson* and the Ohio murder statute reveals that they contain different elements. Therefore, it is the Supreme Court's *analysis,* rather than its *conclusion,* in *Patterson* that has relevance to the case we decide today.

The Ohio murder statute, with which the defendant was charged, provides that "[n]o person shall purposely cause the death of another." R.C. 2903.-02(A). The essential elements of murder, therefore, are (1) purposely (2)

---

8. The New York statute at issue in *Patterson* provided in relevant part:
   "A person is guilty of murder in the second degree when:
   "1. With intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution under this subdivision, it is an affirmative defense that:
   "(a) The defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. Nothing contained in this paragraph shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime." *Patterson, supra,* 432 U.S. at 198, 97 S.Ct. at 2321, 53 L.Ed.2d at 285, fn. 2.

causing the death of another. These are the elements which, under *Winship*, the state must prove beyond a reasonable doubt.

The mitigating circumstances—which the majority treats as an affirmative defense—do negate an essential element of murder. When the defendant asserts that he knowingly killed while under the influence of "sudden passion or in a sudden fit of rage," he necessarily disputes the prosecution's assertion that he purposely killed. Requiring the defendant to prove mitigation forces him to negate the very element that separates murder from voluntary manslaughter—a purposeful intent. Instead of being a separate issue, the mitigating circumstances bear a direct relationship to the defendant's purpose to kill. By forcing the defendant to disprove his purpose to kill, the state avoids its burden under *Winship* to prove every element of the crime beyond a reasonable doubt, and violates the defendant's due process rights.

## III

The issue in this case is whether the trial court properly instructed the jury with regard to voluntary manslaughter. The majority concludes that the trial court's instructions were proper because the defendant bears the burden of proving, by a preponderance of the evidence, that he acted under the influence of "sudden passion or in a sudden fit of rage" in order to mitigate the defendant's culpability from murder to voluntary manslaughter. The majority's allocation of the burden of proof, however, creates a confusing and irreconcilable instruction for the jury.

In this case the trial court first instructed the jury to consider the charge of murder. In order to convict the defendant of murder, they were told, the prosecution must prove all the elements of a purposeful killing beyond a reasonable doubt. Next, the jury was instructed that it could consider the lesser offense of voluntary manslaughter. In order to convict the defendant of voluntary manslaughter the jury must find that the defendant proved mitigation by a preponderance of the evidence. Finally the trial court gave the following instruction:

"If you find that the state proved beyond a reasonable doubt that the defendant purposely caused the death of Annette Akins, * * * but you also find that the defendant proved by a preponderance [*sic*] that he acted while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force, then you must find the defendant guilty of voluntary manslaughter."

In other words, the final instruction to the jury was to convict the defendant of voluntary manslaughter if the state proved a purposeful killing and if the

defendant disproved a purposeful killing. With instructions like these, it is no wonder that the jury was confused and requested the trial court to clarify the murder, voluntary manslaughter, and involuntary manslaughter verdicts.

The voluntary manslaughter statute is poorly drafted and creates confusion regarding allocation of the burden of proof. By focusing on the state's constitutionally mandated burden of proof, *Winship, supra,* the correct jury instructions emerge.

When a defendant is on trial for murder, but the trial court determines that there is sufficient evidence to warrant an instruction on voluntary manslaughter, the jury should be instructed to first consider the charge of murder. If the state proves a purposeful killing beyond a reasonable doubt, then the jury should convict the defendant of murder. If the jury has a reasonable doubt as to the purposeful killing (which acting under the influence of "sudden passion or in a sudden fit of rage" can provide), then the jury should find the defendant not guilty of murder and consider the lesser offense of voluntary manslaughter. In considering voluntary manslaughter, the jury should focus on whether the state proved beyond a reasonable doubt that the defendant knowingly killed. R.C. 2903.03. The jury should be instructed that neither the state nor the defendant bears the burden of proving the mitigating circumstances.[9] If the jury finds beyond a reasonable doubt that the defendant knowingly killed, the jury should convict the defendant of voluntary manslaughter.

## Conclusion

The majority impermissibly shifts the burden to the defendant to disprove an essential element of murder in order to mitigate his culpability to the lesser offense of voluntary manslaughter. The majority reaches a decision that results in a serious violation of the defendant's due process rights. The majority opinion also creates conflicting and confusing jury instructions. Accordingly, I dissent.

MOYER, C.J., and DOUGLAS, J., concur in the foregoing dissenting opinion.

---

9. The majority correctly states that acting under the influence of "sudden passion or in a sudden fit of rage" is not an element of the crime of voluntary manslaughter that the state must prove. *State v. Muscatello* (1978), 55 Ohio St.3d 201, 9 O.O.3d 148, 378 N.E.2d 738, at paragraph one of the syllabus. The majority mistakenly concludes, however, that because the state does not prove mitigation, the defendant must prove it.