[Cite as *In re Q.W.*, 2017-Ohio-8311.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 104966

## IN RE: Q.W.

## Minor Child

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 15115302

**BEFORE:**   Stewart, J., Kilbane, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:**   October 26, 2017

**ATTORNEYS FOR APPELLANT**

Christopher R. Lenahan
2035 Crocker Road, Suite 104
Westlake, OH 44145

R. Brian Moriarty
55 Public Square, 21st Floor
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

Sean Kilbane
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, J.:

**{¶1}** Appellant Q.W., a minor, appeals the judgment of the juvenile court adjudicating her delinquent for committing two acts of telecommunications harassment, in violation of R.C. 2917.21(A)(3), for sending threatening text messages and making threatening phone calls — acts that would be first-degree misdemeanors if committed by an adult. The court imposed a community control sanction of six months under the supervision of the probation department. In two assignments of error, Q.W. challenges the sufficiency of the evidence and argues that her delinquency adjudications are against the manifest weight of the evidence.

**{¶2}** At trial the state's evidence established the relevant background facts. The victim's minor daughter and Q.W. were involved in a romantic relationship. The victim was not happy about this relationship, and her displeasure culminated in a verbal and physical altercation with her daughter. The daughter was subsequently arrested.

**{¶3}** Over the course of the next several days, the victim received a barrage of threatening text messages from a telephone number she did not recognize. These messages contained threats to both the victim's life and property. There were specific references to the manner of death the person would inflict, for example, slicing the victim's throat and bashing her head with a brick. There were also specific references to burning down the victim's house and blowing up her car.

{¶4} In the midst of this stream of messages, and from the same phone number, the victim testified to receiving threatening phone calls. The caller threatened to burn down the victim's house and set her car on fire. The victim testified that she recognized the caller's voice as being Q.W.'s.

{¶5} In response to the messages and calls, the victim contacted Q.W.'s father, made a police report, and sought a restraining order against Q.W. When asked why she contacted the police, the victim responded "[b]ecause it was nonstop."

{¶6} In her first assignment of error, Q.W. challenges the state's evidence as insufficient to support the court's finding that she violated R.C. 2917.21(A)(3). She argues that the evidence did not establish a link between her and the threatening communications. We disagree.

{¶7} This court evaluates challenges to the sufficiency and manifest weight of the evidence in delinquency adjudications under the same standards of review that apply to criminal convictions. *In re C.A.*, 8th Dist. Cuyahoga No. 102675, 2015-Ohio-4768, ¶ 47. In the context of a sufficiency challenge, we review the evidence "'in a light most favorable to the prosecution,'" to determine whether "'any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *In re S.H.*, 8th Dist. Cuyahoga No. 100529, 2014-Ohio-2770, ¶ 17, quoting *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77. When evaluating such a claim, we do not consider a witness's credibility. *State v. Williams*, 8th Dist. Cuyahoga No. 98528, 2013-Ohio-1181, ¶ 27. Instead, we consider whether the admitted evidence,

"if believed, would convince an average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 573 N.E.2d 492 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶8} Q.W. was adjudicated delinquent for two counts of telecommunications harassment in violation of R.C. 2917.21(A)(3), which in relevant part provides:

> No person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be made from a telecommunications device under the person's control, to another, if the caller * * * [d]uring the telecommunication, violates section 2903.21 of the Revised Code.

Relevant to this case, R.C. 2903.21(A) provides "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person * * *."

{¶9} Te victim testified that she received a series of threatening text messages. The court saw reproductions of the messages that the victim created using a screen capture function on her phone. *See State v. Roseberry*, 197 Ohio App.3d 256, 2011-Ohio-5921, 967 N.E.2d 233, ¶ 75 (8th Dist.) (reproductions of text messages are authenticated, introduced, and received into evidence through testimony of recipient). The messages listed a specific phone number as the sender. The victim testified that the threatening phone calls happened "in between" the message barrage and originated from the same number. She identified Q.W. as the caller.

{¶10} The victim's basis for this identification was that she had previously spoken with Q.W. and recognized her voice. Further, the victim testified that the content of one

call confirmed to her that the caller was Q.W. The victim stated that the caller said "stuff about the bond," and knew the victim's address. The significance of "the bond" is unclear. It is also unclear how knowledge of the victim's address demonstrates that the caller was Q.W.

{¶11} The victim's testimony was the only evidence linking Q.W. to the text messages and telephone call(s). The state offered no telephone call logs, cellular triangulation information, or any other kind of records or evidence to connect the telephone number to Q.W. It seems as though this kind of evidence would have been important to the state in light of the fact that the victim did not approve of Q.W.'s relationship with her daughter and that the victim and her daughter had an altercation that culminated in the daughter being arrested. These facts notwithstanding, we cannot say that the victim's testimony alone was insufficient to establish that Q.W. violated the statutes.

> Where the only criminal behavior with which a defendant is charged is the manner in which he conducted his portion of a telephone conversation, the testimony of the person with whom the defendant allegedly had such conversation is not alone sufficient to establish both the commission of the crime and the identify of the defendant unless the witness testifies that he actually recognized the voice on the telephone as belonging to the defendant.

*Bedford Hts. v. Tallarico*, 25 Ohio St.2d 211, 267 N.E.2d 802 (1971), syllabus.

{¶12} Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the state proved the essential elements of telecommunications harassment beyond a reasonable doubt. There was evidence linking Q.W. to the alleged calls and to the text messages by extension. Moreover, the court could have sufficiently concluded Q.W. thereby knowingly caused the victim to believe she would cause serious physical harm to her person or property based on the content of the calls and messages. When asked why she filed a police report and sought a restraining order against Q.W., the victim responded that nobody wants to be threatened and that she had to "protect herself." We overrule the first assignment of error.

{¶13} In her second assigned error, Q.W. challenges her delinquency adjudications as being against the manifest weight of the evidence. She argues that in light of her father's rebuttal testimony that the court clearly lost its way. Again, we disagree.

{¶14} Addressing a challenge to the manifest weight of the evidence requires this court to review the record, weigh the evidence and reasonable inferences drawn from it, and consider witness credibility. *In re D.W.*, 8th Dist. Cuyahoga No. 101116, 2014-Ohio-5038, ¶ 9. We determine whether the trier of fact clearly lost its way in resolving conflicts in the evidence, thereby creating "such a manifest miscarriage of justice" that we must reverse the decision, and order a new trial. (Citation omitted.) *Id.* The Supreme Court has admonished that a new trial based on a manifest weight challenge is to be granted only in the "exceptional case in which the evidence weighs

heavily against the conviction." *Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶15} This is not such a case where the evidence weighs heavily against Q.W.'s delinquency adjudication. Although the state's case was based solely on the victim's testimony, the testimony was uncontroverted. And contrary to Q.W.'s assertion, her father's rebuttal testimony does not create a manifest weight issue. On direct examination, Q.W.'s father testified that he provides a phone for Q.W. with a different number than the one used to make the threatening text messages and calls. On cross-examination, he also claimed that he checks his daughter's phone "daily" or "numerous times a day," and that Q.W. would have told him if she sent threatening text messages.

{¶16} Although the trial court found the father's testimony to not be credible, taking his testimony at face value creates no inconsistency. The state made no argument, nor did the evidence show, that Q.W. necessarily used the phone her father provided to commit the offenses. As such, his testimony created no conflict that the trial court had to necessarily resolve, let alone constituted evidence that weighed heavily against the adjudication and requiring a new trial. Accordingly we overrule Q.W.'s second assignment of error.

{¶17} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court — juvenile division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

MARY EILEEN KILBANE, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR